OPINION
{¶ 1} Appellant, Denise Weisbarth ("Weisbarth"), timely appeals an entry of summary judgment by the Geauga County Common Pleas Court in favor of appellee, Geauga Park District. For the reason stated herein, we affirm the trial court's decision.
 {¶ 2} Weisbarth was employed as a park ranger for the Geauga Park District ("GPD"). In 2001, Weisbarth was assigned as a canine officer. As a canine officer, she worked with a police dog named Sammy who was duly appointed by the GPD on April 10, 2001. In September 2004, Weisbarth was terminated by GPD as a park ranger. In that same month, she filed a complaint in the Geauga County Common Pleas Court, asserting a statutory right to purchase Sammy. Her complaint was styled as a complaint in replevin and/or pursuant to a statutory right of action.[1] According to Weisbarth's complaint, the canine unit of GPD was being disbanded and Weisbarth claimed a statutory right to purchase the dog for one dollar.
 {¶ 3} GPD filed an answer to the original complaint and an amended answer to the amended complaint.
 {¶ 4} On August 11, 2005, GPD filed a Civ.R.60(B) motion for summary judgment. On August 25, 2005, the trial court ordered Weisbarth would have thirty days to respond to GPD's motion. On November 10, 2005, with no responsive pleading submitted by Weisbarth, the trial court entered an order granting GPD's motion for summary judgment.
 {¶ 5} On November 18, 2005, Weisbarth filed a motion to vacate the entry of summary judgment and a motion to accept instanter her brief in opposition to GPD's motion for summary judgment. Weisbarth filed a notice of appeal from the trial court's entry of summary judgment to this court on December 5, 2006, thereby relieving the trial court of jurisdiction. Nevertheless, on December 8, 2005, the trial court granted Weisbarth's motion to vacate its November 10, 2005 summary judgment award to GPD.
 {¶ 6} "[W]hen an appeal is pending before a court of appeals, the trial court is divested of jurisdiction except to take action in aid of the appeal." Daloia v. Franciscan Health Sys. of Cent. Ohio, Inc.
(1997), 79 Ohio St.3d 98, 101 fn. 5. The trial court may only exercise that jurisdiction which is "not inconsistent with the reviewing court's jurisdiction to reverse, modify, or affirm the judgment." Howard v.Catholic Social Serv. of Cuyahoga Cty., Inc. (1994), 70 Ohio St.3d 141,146. With regard to a motion for relief from judgment of an otherwise appealable order, "an appeal divests the trial court of jurisdiction to consider the motion, and that `[j]urisdiction may be conferred on the trial court only through an order by the reviewing court remanding the matter for consideration of the * * * motion.'" Daloia, supracitingHoward, supra, at 147. Accordingly, the trial court's order of December 8, 2005, vacating its prior entry of summary judgment, is void.
 {¶ 7} Weisbarth raises two assignments of error, the first of which is as follows:
 {¶ 8} "The trial court erred in granting defendant summary judgment."
 {¶ 9} We review a grant of summary judgment pursuant to a de novo standard. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. Summary judgment is appropriate only when: "* * * (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." Mootispaw v. Eckstein, 76 Ohio St.3d 383,385, 1996-Ohio-389.
 {¶ 10} The moving party to a Civ.R. 56 motion bears the initial burden of providing the court with a basis for the motion and identifying evidence within the record which demonstrate the absence of an issue of fact on a material element of the nonmoving party's claim. Dresher v.Burt, 75 Ohio St.3d 280, *296, 1996-Ohio-107. If the moving party satisfies its burden, the nonmoving party has the reciprocal burden of providing evidence to demonstrate an issue of material fact. If the nonmoving party fails to satisfy his or her burden, then summary judgment is appropriate. Civ.R. 56(E).
 {¶ 11} GPD claimed that it was entitled to summary judgment because Weisbarth had no statutory right to purchase Sammy. The theory of Weisbarth's complaint stemmed from R.C. 9.62. GPD claimed R.C. 9.62 was not applicable.
 {¶ 12} R.C. 9.62 provides, in pertinent part:
 {¶ 13} "(A) As used in this section:
 {¶ 14} "(1) `Police dog * * *' means a dog *** that has been trained, and may be used, to assist law enforcement officers in the performance of their official duties.
 {¶ 15} "(2) `Law enforcement agency' means an organization or unit made up of law enforcement officers as defined in section 2901.01 of the Revised Code.
 {¶ 16} "(B) Upon the disbanding of the canine * * * unit of a law enforcement agency, the agency shall give the law enforcement officer to whom a police dog * * * is assigned the first chance to purchase the animal, for one dollar. * * *
 {¶ 17} "* * *
 {¶ 18} "(D) A law enforcement officer who leaves * * * [a] canine unit of a law enforcement agency while the police dog * * * assigned to the officer is still fit for duty forfeits the right to purchase the animal under this section."
 {¶ 19} The basis for Weisbarth's R.C. 9.62 statutory right to purchase Sammy for one dollar is based on her belief that the canine unit was disbanded. The record does not support this assumption. According to the affidavits of Betty Cope, Robert McCullough and Dr. Mark Rzeszotarski, all of whom were on the Board of Park Commissioners from at least April 10, 2001 until February 10, 2004, the canine unit of GPD was formed on April 10, 2001.[2] On that same day, Sammy was appointed as a GPD ranger. Following this simultaneous formation and appointment, there is nothing in the record to indicate that the canine unit was disbanded.
 {¶ 20} In fact, there is affirmative evidence in the record to the contrary. The canine unit continued to exist following Weisbarth's termination. A new handler, Ranger Kathleen M. Henning, was trained with Sammy and completed this training on May 5, 2005. It would be an oxymoron to train a new ranger with Sammy if the canine unit had been disbanded.
 {¶ 21} Weisbarth herself admitted that she was uncertain whether the canine unit had actually been disbanded. According to Weisbarth's affidavit, attached to GPD's motion for summary judgment, "I asked Keith McClintock if GPD intended to disband the canine unit, meaning Sammy, and McClintock answered in the affirmative." This statement by Weisbarth and even the alleged statement of McClintock taken as true, is not evidence that the canine unit had actually been disbanded. Rather, these statements indicate an intention to disband the unit. Perhaps these statements even intimate a promise of the board's intention to disband the unit. However, this would be akin to a promissory estoppel theory which has long been held inapplicable to governmental entities. Ohio St.Bd. of Pharm. v. Frantz (1990), 51 Ohio St.3d 143, 145- 146.
 {¶ 22} McClintock's representations of the board's intention to disband the canine unit is just that — a diagnosis of intent. This does not correspond with the actual event. After all, many ill-traveled roads are paved with good intentions.
 {¶ 23} McClintock's deposition testimony confirms that the intention to disband the canine unit never moved beyond the point of discussion.[3] "* * * [W]e have discussed it, but there has been no action taken at this time regarding a decommissioning." McClintock further clarified that "* * * the dog was not decommissioned, that would have required an action by the Board of Park Commissioners. * * * Because they are the board that commissioned the dog."
 {¶ 24} Richard Sherwood, a law enforcement consultant for GPD, recommended the suspension of the canine unit to the board.[4]
According to Sherwood, he recommended the canine unit be "suspended temporarily due to manpower." When confronted with an e-mail during the deposition which was authored by McClintock, Sherwood stated, "To be honest, I don't remember any conversation about decommissioning the dog as any permanent thing at all. As a matter of fact, I would probably be against that personally, so I don't think that we ever discussed this as a permanent decommission."
 {¶ 25} The e-mail, authored by McClintock, confirms that the stages of the discussions regarding decommissioning the unit were varied and that no actual disbandment took place. According to McClintock's communication, "I spoke with David Kessler today. He stated that he called Kevin Powers [Weisbarth's legal counsel] and indicated to him that we would be decommissioning the K-9 unit. Apparently, he thought we were further along with the process and were ready to move." This communication indicates a move by the board in the direction of disbanding the canine unit, but it does not indicate any actual action to do so. In addition, a similar e-mail sent by McClintock to Tom Curtin on February 6, 2004 and marked as Exhibit S-3 of Sherwood's deposition, indicates the board may have been taking steps to decommission the unit. "If the Board decides to decommission Sammy — we will first have to have them approve a policy stating that the handler can purchase for $1."
 {¶ 26} These preparations for disbandment are confirmed by GPD. According to an affidavit from Tom Curtin, GPD executive director: "After the termination of Ms. Weisbarth in September 2004, Interim Chief Ranger, Richard Sherwood [a consultant], Deputy Director, Keith McClintock and myself had discussions regarding the K-9 unit, its effectiveness, and whether the unit should continue to exist. The Board of Park Commissioners decided to not suspend or dissolve the K-9 unit."[5]
 {¶ 27} In that same affidavit, Curtin goes on to explain that another ranger was assigned as a handler of Sammy, that she and Sammy trained as a canine unit at the Ohio Peace Officer Training Commission between January and May 2005, and that she and Sammy were certified as a canine unit on May 24, 2005.
 {¶ 28} All of these communications and discussion indicate the board was examining its options for disbanding the unit, yet none indicate any decommissioning occurred. There may have been intentions to disband the canine unit. There may have been discussions about disbanding the unit. Apparently, there was even a recommendation to suspend the canine unit. However, the unit was never disbanded. In fact, following a brief interlude for Sammy, during which point in time he was bereft of a trainer, the unit became active again with its new handler, Ranger Henning.
 {¶ 29} There is no evidence in the record to support Weisbarth's claim that the canine unit was disbanded, thereby triggering her statutory right to purchase Sammy according to R.C. 9.62(B). The record does not reflect the unit was disbanded in any way — formally or informally, officially or unofficially. The record rather demonstrates that the board discussed disbanding the unit and even took steps in case it decided to disband the unit. However, based on the affidavits, evidence and deposition testimony, the unit remained active. Therefore, Weisbarth was not entitled to purchase Sammy pursuant to R.C. 9.62(B).
 {¶ 30} Although we are constrained to limit our review to the evidence and record as it existed prior to the notice of appeal (and thereby prior to Weisbarth's response to GPD's summary judgment), we would note that the outcome, had the trial court properly retained jurisdiction to rule on the summary judgment motion again following the motion to vacate, would likely be consistent with our review of the record before this court. The record is clear that the canine unit, by virtue of its active status with the new handler, was not disbanded. Weisbarth was terminated in September 2004. Weisbarth filed her complaint in that same month. There is no evidence in the record to support the essential element of Weisbarth's claim that the GPD canine unit had been disbanded as of that time. In November 2004, GPD hired a canine consultant to train Sammy with a new handler. This training occurred between November 2004 and May 2005. Although discussions regarding disbanding the canine unit also occurred during this time, actions were simultaneously being taken, i.e, the training, to maintain the unit. It would appear that the GPD was conducting proper due diligence in researching its options as to the viability of the canine program. In the end, as demonstrated by the training completion and certification, the canine unit remained intact with Sammy and a new handler. Although the record may suggest the unit was on a temporary hiatus from September 2004 until November 2004, this does not correspond to a status of permanent disbandment as required by R.C. 9.62(B).
 {¶ 31} Consequently, the first assignment of error is without merit.
 {¶ 32} Weisbarth's second assignment of error is as follows:
 {¶ 33} "The trial court erred by denying discovery of relevant, unprivileged documents."
 {¶ 34} In this assignment of error, Weisbarth argues that "throughout the discovery process below Weisbarth's discovery requests were repeatedly stiff-armed with claims of privilege by GPD." She claims that the assistance of the trial court was enlisted to obtain unredacted copies of relevant documents. Specifically, Weisbarth is seeking the production of documents that reflect communications between GPD's labor relations representative and GPD that bear on Weisbarth's termination, and which GPD claimed were protected by privilege.
 {¶ 35} However, we fail to see the relevance of an assignment of error that discusses a discovery dispute on the issue of Weisbarth's termination when that issue is not germane to this appeal. As stated previously, the termination and compensation aspects of Weisbarth's complaint as amended were adjudicated by agreement of the parties. Though Weisbarth argues that she has "the burden of proving her employment in good standing at the time the K-9 was decommissioned in order to prevail on her claim in replevin," our analysis in the first assignment of error makes no mention of her good standing at the time of decommissioning. It was not an issue because our decision whether to affirm or reverse the entry of summary judgment turned on the interpretation of R.C. 9.62, and specifically, whether the canine unit was or was not disbanded. As stated by GPD in its motion for summary judgment, this was the "sole remaining claim." All other claims for overtime pay and other compensation and alleged in her amended complaint were resolved by agreed entry during the pendency of the litigation. Thus, her good standing was not at issue.
 {¶ 36} The second assignment of error is without merit.
 {¶ 37} For the reasons stated in the Opinion of this court, the assignments of error are without merit, and it is the judgment and order of this court that the judgment of the Geauga County Court of Common Pleas is affirmed.
DONALD R. FORD, P.J., concurs,
WILLIAM M. O'NEILL, J., dissents with Dissenting Opinion.
[1] Thereafter, Weisbarth filed an amended complaint that added claims for unpaid wages and overtime. Eventually, these two claims were resolved by agreed judgment entry during the pendency of this case.
[2] These affidavits were attached as exhibits to GPD's motion for summary judgment.
[3] McClintock's deposition was filed simultaneously with GPD's motion for summary judgment. In addition, portions of McClintock's deposition were attached as an exhibit in support of GPD's motion.
[4] Portions of Sherwood's deposition were attached as an exhibit to GPD's motion for summary judgment. The entire deposition transcript was also filed simultaneously with GPD's motion.
[5] Curtin's affidavit was attached to GPD's motion for summary judgment.