[Cite as *State v. McClain*, 2011-Ohio-1623.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 10-CA-10 |
| DOUGLAS MCCLAIN | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Guernsey County Court of Common Pleas Case No. 2009-CR-0097


JUDGMENT:                    AFFIRMED

DATE OF JUDGMENT ENTRY:     March 30, 2011


APPEARANCES:

For Plaintiff-Appellee:                         For Defendant-Appellant:

DANIEL G. PADDEN 0038781          GEORGE URBAN 0062725
Guernsey County Prosecutor           116 Cleveland Ave. N., Ste. 808
139 W. Eighth St.                            Canton, Ohio 44702
Cambridge, Ohio 43725

*Delaney, J.*

{¶1} Defendant-Appellant Douglas McClain appeals the judgment of the Guernsey County Court of Common Pleas, convicting him of one count of murder, an unclassified felony, in violation of R.C. 2903.02, with a firearm specification in violation of R.C. 2941.145.

{¶2} In August, 2008, Appellant met Candace O'Neill. Although O'Neill had her own residence, she moved into Appellant's trailer, which was owned by his parents. In December, 2008, O'Neill began expressing concerns about Appellant's behavior, stating that he was acting secretive about where he went. Appellant allegedly told O'Neill that she needed to move out of his home. On the evening of December 27, 2008, O'Neill spoke to her daughter, Meghan. On December 27, O'Neill, who had a college degree in psychology, asked Meghan to obtain paperwork so that O'Neill could apply for a license to be a childcare provider in Summit County.

{¶3} O'Neill's friend, Kate Hillman, stated that she spoke with O'Neill at approximately 2:00 p.m. on the day that O'Neill died, December 28, 2008, and that O'Neill stated that her relationship with Appellant was not going well. Hillman stated that she told O'Neill that if the relationship was not working out, O'Neill should walk to the nearby home of O'Neill's sister, Michelle and telephone Hillman when she arrived at Michelle's house. O'Neill indicated that she would, however, she never called Hillman back.

{¶4} On December 28, 2008, at 4:35 p.m., Appellant called 911, stating that he had just been shot. According to dispatcher, Christine Galbreth, Appellant was difficult to understand on the phone. Appellant told the dispatcher that the person who shot him

had died.  When the dispatcher asked who had shot him, he stated that he needed help and hung up.  Appellant then called his mother and told her "goodbye."

{¶5}    When authorities arrived, Appellant was pacing around the outside of the trailer where he lived.  He stated that his girlfriend shot him and he shot her back.  The emergency medical squad arrived at 4:39 p.m., and observed that Appellant had a through and through gunshot wound on the right side of his chest.

{¶6}    Despite his injury, Appellant insisted on going to the backyard to say goodbye to his pet wolves and refused assistance getting into the ambulance.  He refused assistance in removing his hoodie and removed his own sweatshirt in the ambulance.   Appellant was transported to the hospital with two fractured ribs, a hematoma on his lung, and was placed in intensive care.  He later left the hospital against medical advice.  Subsequently, he returned to the hospital and was readmitted with a partially collapsed lung and a pneumothorax.  Dr. Clark Leslie, Appellant's treating physician, testified that it was possible that Appellant's gunshot wound was self-inflicted.

{¶7}    As sheriff's deputies searched the inside of the home on December 28, 2008, they discovered the body of Candace O'Neill lying in the trailer between the kitchen and the entry to the master bedroom.  Her body was lying face up with her feet facing the front door.  The coroner discovered a .38 caliber bullet entry wound was in the middle of her back.  The coroner discovered that the bullet had traveled in a slightly downward trajectory and exited her body in the middle of the front of her chest.  The bullet then struck a portable, folded-up treadmill near her body, before stopping under a living room chair in front of O'Neill's body.  There was minimal blood around O'Neill, as

the coroner testified that a large amount of blood was pooled in her abdominal cavity, likely due to the fact that her body had been turned over after being shot. DNA testing did not exclude Appellant as a contributor to the blood found on O'Neill's neck, the kitchen floor or the treadmill.

{¶8} The coroner testified that when O'Neill was shot, she was facing away from the kitchen and toward the front door. Deputies found the .38 caliber pistol on the kitchen counter and the .45 caliber pistol on the kitchen table in the corner of the kitchen furthest away from O'Neill's body, just to the left of the back door of the residence.

{¶9} O'Neill's clothing was tested for gunshot residue and it was determined that when Appellant shot her, he was between one and three feet away from her. Both Appellant and O'Neill tested positive for gunshot residue on their hands. There was testimony that the gunshot residue on O'Neill's hand could have been deposited there based on the proximity of her body to the gun from when Appellant shot her.

{¶10} Guernsey County Deputy Sheriff Jason May testified that there was blood in the kitchen, on the kitchen floor, in both bathrooms, and on both toilets. Officer Curtis Braniger, who arrived three hours after the shooting, testified that there was so much blood in the residence, that had he collected it all, he would still be collecting it on the day of trial. May also testified that there was marijuana in the toilets and that the police also found paraphernalia used to cultivate marijuana in the back bedroom. They also located a black gun holster in the master bedroom on top of a clothing armoire, which had blood evidence on it, that did not exclude the blood of Appellant.

{¶11} May located a spent .45 caliber shell casing to a .45 caliber handgun under the kitchen table and located the .45 caliber bullet in the wall near the kitchen

table.  The bullet retrieved from the wall was determined to have been fired by the gun located in Appellant's residence.

{¶12}  In the months following O'Neill's death, Appellant told one person that O'Neill shot him in the kitchen and that he shot her while she leaned over him as he lay prone on the kitchen floor.  Such a scenario was refuted by the testimony of the coroner.  Appellant told two other people that he shot O'Neill in the chest and then shot himself to make it look like self-defense.

{¶13}  In March, 2009, Thomas Snyder, Jr. met Appellant when Appellant was introduced to Synder's father, Thomas Snyder, Sr., who killed himself on September 28, 2009.

{¶14}  The junior Snyder testified that in June, 2009, Appellant was at the Snyder residence drinking whiskey and beer.  He stated that Appellant told him and his father that Appellant shot himself after he shot O'Neill in the chest while she was in the kitchen.  Snyder further testified that Appellant stated that he tried to shoot himself in the rib, but accidentally "took out his lung."  Snyder also testified that Thomas Snyder, Sr.'s girlfriend, Ashley Goughenour and her two children left Snyder, Sr., in May and June, 2009, to briefly live with Appellant while they had a romantic relationship. Goughenour returned to Snyder, Sr., in June, 2009.  Snyder claimed that Snyder, Sr. killed himself because of Appellant.

{¶15}  On July 8, 2009, Appellant was indicted on count of murder, in violation of R.C. 2903.02, with a firearm specification, in violation of R.C. 2941.145.  On January 26, 2010, Appellant proceeded to trial in front of a jury and was convicted as charged. The trial court sentenced Appellant to an indefinite term of fifteen years to life for the

murder conviction, to run consecutive to a mandatory three year prison term for the firearm specification.

{¶16} Appellant filed a timely appeal and raises six Assignments of Error:

{¶17} "I.   THE TRIAL COURT'S FINDING OF GUILT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SUFFICIENCY OF THE EVIDENCE.

{¶18} "II.    THE TRIAL COURT COMMITTED ERROR BY ADMITTING EXCESSIVE PHOTOGRAPHIC EVIDENCE WHICH WERE GRUESOME AND INFLAMMATORY.

{¶19} "III.    THE TRIAL COURT COMMITTED ERROR BY IMPROPERLY CHARGING THE JURY.

{¶20} "IV. THE APPELLANT WAS DEPRIVED OF DUE PROCESS OF [SIC] BY THE MISCONDUCT OF THE PROSECUTOR.

{¶21} "V.   THE TRIAL COURT ERRED IN ADMITTING EVIDENCE WHICH WAS UNFAIRLY PREJUDICIAL.   THE TRIAL COURT ERRED IN ADMITTING EVIDENCE WHICH WAS UNFAIRLY PREJUDICIAL.[SIC]

{¶22} "VI. THE APPELLANT WAS DENIED HIS RIGHTS TO DUE PROCESS AND OF ASSISTANCE OF COUNSEL AS BECAUSE HIS TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE."

I.

{¶23} In his first assignment of error, Appellant argues that his convictions were not supported by sufficient evidence and that said convictions were against the manifest weight of the evidence.

{¶24} When reviewing a claim of sufficiency of the evidence, an appellate court's role is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. Contrary to a manifest weight argument, a sufficiency analysis raises a question of law and does not allow the court to weigh the evidence. *State v. Martin* (1983), 20 Ohio App.3d 172, 175. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Thompkins,* 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.

{¶25} Conversely, when analyzing a manifest weight claim, this Court sits as a "thirteenth juror" and in reviewing the entire record, "weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 548, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175.

{¶26} In the present case, the State had to prove that Appellant purposely caused the death of another with a firearm. R.C. 2903.02; R.C. 2941.145. When viewing the evidence in the light most favorable to the prosecution, as we are required to do under a sufficiency analysis, we find that there was sufficient evidence to support Appellant's conviction.

{¶27} Forensic evidence supports the State's theory that Appellant shot and killed O'Neill as she was turned away from him.   Evidence, as adduced at trial, demonstrated that Appellant shot O'Neill from less than three feet away in her back, and that the bullet was headed in a downward trajectory, exiting several inches below the entrance wound.   The bullet then struck the treadmill that was in front of O'Neill's body. Moreover, Appellant told two people that he shot O'Neill and then shot himself to make it appear that he had shot her in self-defense.   This evidence is sufficient to support Appellant's conviction.

{¶28} Moreover, the evidence supporting Appellant's conviction is not against the weight of the evidence.   Appellant has failed to show that the jury lost its way in convicting Appellant of murder with a firearm specification.

{¶29} Appellant failed to testify on his own behalf and in order to show that he acted in self-defense, which is an affirmative defense that he would have to prove by a preponderance of the evidence, he would have to show (1) that he was not at fault in creating the situation giving rise to the affray; (2) that he had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was the use of deadly force; and (3) that he did not violate any duty to retreat or to avoid the danger. *State v. Robbins* (1979), 58 Ohio St.2d 74, 388 N.E.2d 755, paragraph two of the syllabus.   There was no evidence submitted on Appellant's behalf that meet these criteria, and as such, we cannot find that the jury lost its way in convicting Appellant of murder and declining to find that he acted in self-defense.

{¶30} Moreover, based on the evidence presented at trial, the jury reasonably could have concluded that Appellant purposely caused the death of O'Neill.

{¶31} Appellant's first assignment of error is overruled.

II.

{¶32} In Appellant's second assignment of error, he argues that the trial court erred by permitting the introduction of gruesome and inflammatory photographs during the trial.

{¶33} Initially, we note that Appellant failed to object to this alleged error at trial. "It is a general rule that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *State v. Campbell* (1994), 69 Ohio St.3d 38, 40, 630 N.E.2d 339, 344, quoting *State v. Childs* (1968), 14 Ohio St.2d 56, paragraph three of the syllabus.

{¶34} Accordingly, Appellant has waived all but plain error in this regard. *State v. Hill* (2001), 92 Ohio St.3d 191, 196, 749 N.E.2d 274, 279; Crim. R. 52(B). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, paragraph three of the syllabus, 372 N.E.2d 804. Plain error will not be found absent a showing by Appellant that "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Williams*, 99 Ohio St.3d 439, 458, 2003-Ohio-4164, at ¶ 40, quoting *Long,* supra, at paragraph two of the syllabus.

{¶35} Additionally, trial courts are granted broad discretion with respect to the admission or exclusion of evidence at trial. *State v. Sage* (1987), 31 Ohio St.3d 173,

180, 510 N.E.2d 343, 348. Thus, an appellate court will not reverse a trial court's ruling absent an abuse of discretion. *State v. Myers*, 97 Ohio St.3d 335, 348, 2002-Ohio-6658, ¶75. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

{¶36} "Although a photograph may be rendered inadmissible by its inflammatory nature, the mere fact that it is gruesome or horrendous is not sufficient to render it inadmissible if the trial court, in the exercise of its discretion, feels that it would prove useful to the jury." *State v. Woodards* (1966), 6 Ohio St.2d 14, 25, 215 N.E.2d 568, 577.

{¶37} We do not find that the trial court abused its discretion in admitting the complained of photographs. The photographs clarified the position that the body was found in and the placement of the wound on the victim's body. While a couple of the photographs were repetitive, we do not find the admission of these photographs to rise to the level of plain error.

{¶38} Moreover, even if the admission of the photographs of the victim alive with Appellant standing with Appellant's pet wolves rose to the level of plain error, Appellant has not proven that he was prejudiced by the introduction of such photographs. Appellant admitted to Thomas Snyder that he shot O'Neill and the forensic evidence supports his admission.

{¶39} Appellant's second assignment of error is overruled.

III.

{¶40} In his third assignment of error, Appellant argues that the trial court erred in instructing the jury. Specifically, Appellant argues that the trial court failed to properly instruct the jury on the issue of self defense. However, Appellant's argument appears to complain more about the manner of the verdict form than the jury instruction. Appellant has provided no legal authority that states that a jury must reject an affirmative defense on a verdict form. We further find no law in the state of Ohio requiring the jury verdict forms to provide a place for a jury to reject an affirmative defense. Moreover, we have already determined that Appellant failed to present evidence that he acted in self-defense.

{¶41} Appellant's third assignment of error is overruled.

IV.

{¶42} In his fourth assignment of error, Appellant argues that the prosecutor committed misconduct, thereby depriving him of his right to a fair trial.

{¶43} The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and if so, whether those comments and remarks prejudicially affected the substantial rights of the accused. *State v. Lott* (1990), 51 Ohio St.3d 160, 555 N.E.2d 293, certiorari denied (1990), 498 U.S. 1017, 111 S.Ct. 591, 112 L.Ed.2d 596. In reviewing allegations of prosecutorial misconduct, we must review the complained of conduct in the context of the entire trial. *Darden v. Wainwright* (1986), 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144.

{¶44} Again, Appellant failed to object to the complained of conduct at trial, therefore a plain error standard applies as well. *Long,* supra.

{¶45} Appellant first argues that the prosecutor improperly commented on Appellant's right not to testify in voir dire. In Ohio, the test has been established that in order for a remark by a prosecutor on this matter to be prohibited or violative of a defendant's right, the court must determine whether the remark was manifestly intended to refer to the defendant's failing to testify or whether the jury "naturally and necessarily" would have taken the remark to be a comment on the defendant's failing to testify. *State v. Ferguson* (1983), 5 Ohio St.3d 160, 450 N.E.2d 265. We do not find that the prosecutor's remark that "All members of the jury understand that the State of Ohio is not permitted to call the Defendant as a witness in a case? Everybody understand that?" to meet the test set forth in *Ferguson*. Accordingly, we reject Appellant's argument in this regard.

{¶46} Next, Appellant argues that the prosecutor committed misconduct by implying that Appellant had the burden of proof "above and beyond what he incurred for the affirmative defense of self-defense" (Appellant's brief, p. 18), when the prosecutor stated in closing argument, "The defense has failed miserably at the burden of proof in this case and cannot meet the burden of proof in self-defense, and he's guilty of murder by shooting an unarmed woman in the back at close range." We do not find this statement to be either a misstatement of the law or to be in error. Appellant's argument is again rejected.

{¶47} Appellant next argues that the State improperly played on the sympathies of the jury by having O'Neill's daughter testify that O'Neill had a college degree and had inquired about moving to Summit County to become a childcare provider. Such evidence goes to show that O'Neill's relationship with Appellant was deteriorating and

permissibly aided in proving the State's case. We further do not find that the testimony of Kate Hillman was improperly admitted or rose to the level of plain error. Hillman spoke to O'Neill on the day of her death and testified that O'Neill and Appellant were having problems. Moreover, Appellant called Hillman as a witness; to charge the prosecutor with misconduct for cross-examining a defense witness would require that Appellant jump a serious hurdle in proving that the prosecutor's remarks substantially hurt Appellant's case when viewed in the context of the whole trial.

{¶48} Appellant's argument that the State withheld evidence and committed a Brady violation is outside the scope of the record, and is therefore not appropriate for review on appeal. Nurse Blackburn testified at trial that she had not turned over her personal charting notes to either the prosecutor or the defense; therefore we do not see how Appellant has shown that the prosecutor could have committed a discovery violation in not supplying the defense with evidence it did not have.

{¶49} Appellant also asserts that the prosecutor's statement in closing argument of "[t]hank you for allowing me to serve you," was improper. "Misleading and ingratiating statements such as these are designed to disguise the fact that the prosecution needs to win cases with an abundance of publicity in order to win reelection." (Appellant's brief, p. 18). Closing arguments are considered in the entirety of the trial. *Ferguson*, supra. While most attorneys, in both civil and criminal cases, both for plaintiffs and defendants, thank the jury for their service either during opening statements or closing arguments, we do not find the prosecutor's statement to be improper.

{¶50} None of the complained of conduct amounts to error, much less plain error, on behalf of the prosecution.

{¶51} Appellant's fourth assignment of error is overruled.

V.

{¶52} In his fifth assignment of error, Appellant argues that the trial court erred in admitting evidence that was unfairly prejudicial. Specifically, Appellant argues that it was improper for the trial court to permit evidence to be admitted that Appellant had marijuana in his residence as well as equipment in his residence for growing marijuana in his residence.

{¶53} Again, this evidence was not objected to at trial, and therefore is subject to a plain error standard of review. *Long*, supra. Moreover, Appellant cross-examined witnesses regarding this evidence at trial, thereby waiving any alleged error. See, e.g., *State v. Miller* (1988), 56 Ohio App.3d 130, 565 N.E.2d 840

{¶54} We find the State's argument persuasive that evidence of Appellant's attempt to dispose of the marijuana after he had suffered a gunshot wound, self-inflicted or not, was relevant as a possible motive for the murder of O'Neill. The fact that Appellant went from room to room, as evidenced by the blood trail, attempting to dispose of marijuana, while he was suffering from a severe gunshot wound, is certainly relevant to motive. Evid. R. 404(B).

{¶55} Moreover, Appellant's argument that the diagram of the interior of the house trailer was not to scale and that it was inaccurate goes to weight, not admissibility. *State v. Landrum* (1990), 53 Ohio St.3d 107, 559 N.E.2d 710.

{¶56}  Again, we do not find the admission of this evidence to rise to the level of plain error.

{¶57}  Appellant's fifth assignment of error is overruled.

VI.

{¶58}  In his sixth assignment of error, Appellant argues that he received ineffective assistance of counsel.

{¶59}  To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test.  Initially, a defendant must show that his trial counsel acted incompetently. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052.  In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  Id. at 689, quoting *Michel v. Louisiana* (1955), 350 U.S. 91, 101, 76 S.Ct. 158, 164.

{¶60}  "There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way."  *Strickland*, 466 U.S. at 689.  The question is whether counsel acted "outside the wide range of professionally competent assistance."  Id. at 690.

{¶61}  Even if a defendant shows that his counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test.  Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.

{¶62}  Appellant's sole argument in this regard is that trial counsel was ineffective for failing to call a ballistics expert to prove that Appellant acted in self-defense.  Such a matter is again outside the record, and therefore not appropriate for appellate review. App. R. 16(A)(7) provides that his brief must contain, "An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, *with citations to the authorities, statutes, and parts of the record on which appellant relies.*" (Emphasis added).

{¶63}  We have previously held that our review on appeal is limited to facts within the record that were before the trial court. *W.M. Specialty Mortgage v. Mack*, 5th Dist. No.2007CA49, citing *State v. DeMastry*, 155 Ohio App.3d 110, 119-120, 799 N.E.2d 222, 2003-Ohio-5588 and *State v. Ishmail* (1978), 54 Ohio St.2d 404, 377 N.E.2d 500. See also *State v. Showalter*, 5th Dist. No. 06CAC100081, 2004-Ohio-7166. Additionally, the Eighth District, in *Weisbarth v. The Geauga Park District*, 8th Dist. No.2005-G-2675, 2007-Ohio-211, at ¶ 30, noted that appellate review is limited to the evidence and the record as it existed prior to the notice of appeal being filed.

{¶64}  As trial counsel's reasoning for not calling such an expert witness is outside of the record, we decline to address Appellant's argument.

{¶65}  Appellant's sixth assignment of error is overruled.

{¶66}  For the foregoing reasons, the judgment of the Guernsey County Court of Common Pleas is affirmed.

By: Delaney, J.

Gwin, P.J. and

Wise, J. concur.


_____
HON. PATRICIA A. DELANEY


_____
HON. W. SCOTT GWIN


_____
HON. JOHN W. WISE

[Cite as *State v. McClain*, 2011-Ohio-1623.]

IN THE COURT OF APPEALS FOR GUERNSEY COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| DOUGLAS MCCLAIN | : | |
| | : | |
| Defendant-Appellant | : | Case No. 10-CA-10 |
| | : | |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Guernsey County Court of Common Pleas is affirmed. Costs assessed to Appellant.

_____
HON. PATRICIA A. DELANEY

_____
HON. W. SCOTT GWIN

_____
HON. JOHN W. WISE