**[Cite as *State v. Schmidt*, 2023-Ohio-3845.]**

## IN THE COURT OF APPEALS OF OHIO
### THIRD APPELLATE DISTRICT
### SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

        CASE NO. 13-23-01

v.

THOMAS M. SCHMIDT,        O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Seneca County Common Pleas Court
Trial Court No. 2021 CR 0014

**Judgment Affirmed**

**Date of Decision:  October 23, 2023**

APPEARANCES:

    *Brian A. Smith* **for Appellant**

    *Angela M. Boes* **for Appellee**

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Thomas M. Schmidt ("Schmidt"), appeals his convictions for unlawful sexual conduct with Aly.S. when she was a minor. For the reasons set forth below, we affirm.

{¶2} The genesis of this case involves the delayed disclosure by Aly.S. of sexual conduct between Schmidt and her at her parent's home in Seneca County, Ohio, when she was 13.[1]

{¶3} On February 10, 2021, the Seneca County Grand Jury indicted Schmidt on four criminal counts of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A), (B)(3), all third-degree felonies. On October 26, 2022, Schmidt appeared for arraignment and entered not guilty pleas.

{¶4} Schmidt's charges proceeded to a jury trial on January 30 and 31, 2023. Ultimately, Schmidt was found guilty of all criminal charges, together with the findings that Schmidt was 10 or more years older than Aly.S. at the time each offense occurred.

{¶5} On February 2, 2023, the trial court sentenced Schmidt to 18-month prison terms on Counts One and Three and 36-month prison terms on Counts Two and Four. The trial court ordered Counts One and Three to be served concurrent with each other and concurrent with the sentences imposed in Counts Two and Four.

---

[1] Aly.S. was 13 at the time of the offenses, 20 at the time of her disclosure to law enforcement, and 22 at the time of trial.

However, the trial court ordered the sentences in Counts Two and Four to run consecutively to one another, for a total prison term of 72 months.

{¶6} Schmidt filed a timely notice of appeal and raises three assignments of error for our review. We begin by addressing Schmidt's second assignment of error, followed by his first assignment of error, and end with his third assignment of error.

**Second Assignment of Error**

**Because the State's witnesses failed to properly authenticate the purported photographs, and purported messages, the trial court abused its discretion in admitting State's Exhibits 1 through 12.**

{¶7} In his second assignment of error, Schmidt argues that the trial court erred by admitting State's Exhibits 1 through 12. Specifically, Schmidt contends that the State did not present evidence sufficient to support a finding that the contents of the State's 12 exhibits (i.e., images from Aly.S.'s phone, which included copies of images uploaded to her Facebook account, the messages from Aly.S.'s Facebook-Messenger account, and text messages from her cellphone) are not what the State claimed them to be. Thus, the State did not meet the requirements for authentication or identification under Evid.R. 901(A) for these exhibits.

*Standard of Review*

{¶8} The admission or exclusion of evidence lies within the trial court's discretion, and a reviewing court should not reverse absent an abuse of discretion and material prejudice. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶

62, citing *State v. Issa*, 93 Ohio St.3d 49, 64 (2001), citing *State v. Maurer*, 15 Ohio St.3d 239, 265 (1984).

*Analysis*

{¶9} Principally, Schmidt sets forth two arguments: 1) that the State failed to lay the proper foundation to authenticate State's Exhibits 1-11, and 2) that the State did not establish that the identity of the person texting Aly.S. (in State's Exhibit 12) was Schmidt. Thus, he argues that State's Exhibits 1-12 were inadmissible.

{¶10} Evid.R. 901 governs authentication and identification. Evid.R. 901(A) provides that "authentication or identification" is a condition precedent to the admissibility of evidence. This requirement is satisfied "by evidence sufficient to support a finding that *the matter in question* is what its proponent claims." (Emphasis added.) Evid.R. 901(A). Importantly, the threshold standard for authentication is *low* under Evid.R. 901(A), and does not require conclusive proof of authenticity or identity, but only a *prima facie* showing through direct or circumstantial evidence that the matter in question is what its proponent claims. *See State v. Huge*, 1st Dist. Hamilton No. C-120388, 2013-Ohio-2160, ¶ 27. Further, Evid.R. 901(B) provides non-exhaustive illustrations by which authentication and identification can be achieved.

{¶11} Under this assignment of error, we are confronted with evidence in the form of electronic-print media (i.e., hard *copies* of images, instant messages, and

text messages in the form of a document–printed out). Thus, typically the State introduces evidence from the person who captured the screenshots or the recipient of the messages since that person has personal knowledge of the content and can identify the sender. *See State v. Primous*, 8th Dist. Cuyahoga No. 108341, 2020-Ohio-912, ¶ 22.

{¶12} During trial, the State called Aly.S. as a witness to authenticate the images in question and their content as well as to identify the sender of the messages. Further, the State called Detective Kevin Reinbolt ("Det. Reinbolt") to testify as being the recipient of the email that contained images and messages.

{¶13} We begin by addressing Schmidt's argument relating to State's Exhibits 1-10 (the images uploaded to Aly.S's Facebook account). Aly.S. testified that she was present when images were taken and that they fairly and accurately depicted what is represented. (Jan. 30, 2022 Tr. at 231-232). Further, Det. Reinbolt testified that the screenshots were true and accurate copies of what he received from Aly.S. via email. (*Id.* at 295).

{¶14} Importantly, Schmidt testified (at trial) in his defense, and he did not dispute that State's Exhibits 1, 2, 3, 4, 5, 6, 7, and 8 accurately depicted him and his vehicle nor did he dispute that he was in the company of Aly.S. on the dates that the images were captured. Further, Schmidt did not dispute that State's Exhibit 10, a *selfie* of Aly.S. and another minor child, was not altered, contrived, or manipulated

in some fashion.[2]  Thus, we conclude that the State made a *prima facie* showing through direct and circumstantial evidence that was sufficient to demonstrate that State's Exhibits 1-8, and 10 were authentic.  *See State v. Caslin*, 10th Dist. Franklin No. 17AP-613, 2018-Ohio-5362, ¶ 20.

**{¶15}** Nevertheless, Schmidt raises a different argument with respect to State's Exhibit 9.[3]  Schmidt argues that Exhibit 9 did not accurately represent the layout and the lighting of Aly.S.'s family's living and dining rooms on December 25, 2013.  To us, Schmidt's challenges involve *factual* differences in the images, which were properly addressed through direct and cross-examination.  Therefore, Schmidt's argument goes to the weight, not the admissibility of the exhibit.  Thus, we see no abuse of discretion with the trial court's admission of State's Exhibit 9. *See State v. McClain*, 5th Dist. Guernsey No. 10-CA-10, 2011-Ohio-1623, ¶ 55 (Mar. 30, 2011), citing *State v. Landrum*, 53 Ohio St.3d 107 (1990).  *See also State v. Gabriel*, 3d Dist. Crawford No. 3-80-12, 1981 WL 6799, *2 (Mar. 2, 1981).

**{¶16}** Addressing Schmidt's challenge to State's Exhibit 11 (i.e., Aly.S.'s and Schmidt's Facebook-Messenger messages from 2017).  The record reflects that Aly.S. testified that she compiled screenshots of the messages between her and Schmidt's on their Facebook-Messenger accounts.  She testified that Schmidt's

---

[2] A selfie is an image or photograph taken of oneself (sometimes with others) using a camera/lens.

[3] State's Exhibit 9 is an image showing Schmidt seated beside Aly.S. at the family's dining-room table on December 25, 2013 with the Christmas tree in the background.  Schmidt was alleged (under Count Three) to have digitally penetrated Aly.S. behind the Christmas tree in the living room while her family was playing cards at the table in the adjacent dining room that same day.

Facebook-Messenger account is linked to his Facebook account and the profile picture (of Schmidt holding his daughter) on his account can be seen in the content of the messages sent to her on her Facebook-Messenger account. Moreover, Aly.S. testified that her messages sent to Schmidt were a true and accurate copies of what she screenshotted for the dates ranging from April through August 2017. *See* Evid.R. 901(B)(1) and (B)(4).

**{¶17}** Critically, Schmidt testified that he did *not* dispute that he had the conversations with Aly.S. through Facebook Messenger. *See State v. Croghan*, 9th Dist. Summit No. 29290, 2019-Ohio-3970, ¶ 10 (concluding Croghan's admission the statements made through her social-account were her statements was evidence sufficient for the jury to conclude they were authentic). However, he contends that the context of the conversations referenced his consensual-sexual relationship with Aly.S. when she was 16 *and not* 13. Once again, Schmidt's argument goes to the weight of the evidence rather than to its admissibility. Therefore, we conclude that State's Exhibit 11 was properly authenticated and admitted into evidence by the trial court. *See McClain* at ¶ 55, citing *Landrum* at 107; *Gabriel* at *2.

**{¶18}** Finally, we address Schmidt's challenge to State's Exhibit 12 (i.e., the collation of text messages sent and received by Aly.S. on her cellphone in 2020). Even though Schmidt does not dispute that he had communications with Aly.S. in 2020, he argues that his communications were through Snapchat and not via text

message. According to Schmidt, the State failed to "identify" him as being the sender of these text messages in Exhibit 12.

{¶19} As to Exhibit 12, the State focused on the content of the messages as well as the circumstances surrounding the communications. Det. Reinbolt testified that he asked Aly.S. to contact Schmidt to discuss their past sexual activity. In response, Aly.S. stated that she contacted Beatrice, the mother of Schmidt's child, through Facebook Messenger because she deleted Schmidt's phone number. Aly.S. told Beatrice that she was a family friend looking to reconnect with Schmidt. Aly.S. gave Beatrice her cellphone number for her to pass along to Schmidt. Aly.S. testified that soon thereafter she received a text message (on the number she provided Beatrice) from a number she did not recognize. Aly.S. then began communicating with this "person" whom she ultimately identified (as Schmidt) based upon the content of their text messages.

{¶20} Aly.S. testified that the "person" sending her text messages knew and discussed intimate details that only she and Schmidt would know. Specifically, Aly.S. testified that the "person" texting her knew specific details concerning her sexual conduct with Schmidt in November 2013. Further, the "person" texting discussed a fear of apprehension; identified Schmidt's vehicle from 2013; referenced relationships with Beatrice and Brittany; and knew that Beatrice had blocked Aly.S. after she contacted her to reach out to him. *Id.* After reviewing

these message, Aly.S. took screenshots of them and sent them to Det. Reinbolt's via email.

**{¶21}** In our review of the record, we conclude that State's Exhibit 12 was properly authenticated since the trial court could determine that the State presented evidence sufficient to support a finding that the text messages were made and sent by Schmidt. *See State v. Thomas*, 11th Dist. Portage No. 2017-P-0094, 2019-Ohio-2795, ¶ 52-53; *State v. Lotzer*, 3d Dist. Allen No. 1-20-30, 2021-Ohio-3701, ¶ 22, 26. Therefore, we conclude that the trial court did not err by admitting State's Exhibit 12 into evidence.

**{¶22}** Accordingly, Schmidt's second assignment of error is overruled.

### First Assignment of Error

**Because the jury lost its way and created a manifest miscarriage of justice in finding appellant guilty of each of the counts of Unlawful Sexual Conduct with a Minor, Appellant's convictions were against the manifest weight of the evidence.**

**{¶23}** In Schmidt's first assignment of error, he argues that the jury's findings of guilt are against the manifest weight of the evidence. Specifically, he argues that the State presented no physical evidence to corroborate the offenses; that Aly.S.'s testimony was inconsistent with her statements to law enforcement; and that Schmidt was able to establish an alibi as it pertains to Counts One and Two.[4]

*Standard of Review*

---

[4] Notably, Aly.S.'s audio-recorded statement was not admitted at trial as an exhibit. It was, however, referenced several times both during the direct- and cross-examinations of Aly.S. and Det. Reinbolt.

**{¶24}** In determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), *superseded by state statute on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

*Analysis*

**{¶25}** All three of Schmidt's challenges can be distilled into an attack on the jury's credibility determination of the witnesses. "'Although we review credibility when considering the manifest weight of the evidence, the credibility of witnesses is primarily a determination for the trier of fact.'" *State v. Chute*, 3d Dist. Union No. 14-22-02, 2022-Ohio-2722, ¶ 30, quoting *State v. Banks*, 8th Dist. Cuyahoga

No. 96535, 2011-Ohio-5671, ¶ 13, citing *DeHass* at 230, paragraph one of the syllabus.

**{¶26}** This case involves a delayed disclosure of sexual activity with a minor child after that child became an adult. Further, it also encompasses a classic "he-said/she-said" scenario wherein Aly.S. (now an adult) and Schmidt (the alleged perpetrator) testified to a different version of the charged events. To us, Schmidt challenges Aly.S.'s credibility and her sister (Ale.S.'s) asserting that the jury should have found Schmidt and his witness to be more credible. Indeed, where there is little-to-no physical evidence to corroborate a victim's allegations, credibility of the witnesses is the primary factor in determining guilt. *See State v. Coleman*, 3d Dist. Logan No. 8-17-50, 2018-Ohio-1681, ¶ 43.

**{¶27}** The record supports that the jury had the opportunity to observe all of the witnesses testify at trial, and, it is clear that the jury found the State's witnesses to be more credible. Indeed, the jury "'is best able "to view the witnesses and observe their demeanor, gestures[,] and voice inflections, and use these observations in weighing the credibility of the proffered testimony."'" *Chute* at ¶ 31 quoting *Banks* at ¶ 13, quoting *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 24, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Moreover, it is within the province of the jury to parse out the credible portions of the witnesses' testimonies as it pertained to any perceived inconsistencies. *See State v. Wainwright*, 7th Dist. Mahoning No. 119 MA 0023, 2020-Ohio-623, ¶ 37, citing

*State v. Mastel*, 26 Ohio St.2d 170, 176-177 (1971). "'"A verdict is not against the manifest weight of the evidence because the [jury] chose to believe the State's witnesses rather than the defendant's version of the events."'" *State v. Missler*, 3d Dist. Hardin No. 6-14-06, 2015-Ohio-1076, ¶ 44, quoting *State v. Bean*, 9th Dist. Summit No. 26852, 2014-Ohio-908, ¶ 15, quoting *State v. Martinez*, 9th Dist. Wayne No. 12CA0054, 2013-Ohio-3189, ¶ 16.

{¶28} Based upon our review of the entire record, we do not conclude that the jury's witness-credibility determinations were unreasonable. Therefore, we do not conclude that the jury clearly lost its way, which created a manifest miscarriage of justice such that Schmidt's convictions under Counts One, Two, Three, and Four must be reversed and a new trial ordered. Consequently, we conclude that the jury's findings of guilt for unlawful sexual conduct with a minor under Counts One through Four are not against the manifest weight of the evidence.

{¶29} For the reasons set forth above, Schmidt's first assignment of error is overruled.

### Third Assignment of Error

**Because the record does not support the trial court's findings pursuant to R.C. 2929.14(C)(4), the trial court's imposition of consecutive sentence was not supported by the record.**

{¶30} In his third assignment of error, Schmidt argues that the trial court's consecutive-sentencing findings (under Counts Two and Four) are not supported by the record. Specifically, he argues that his lack of criminal history and the nature

of the relationship between Aly.S. and Schmidt demonstrates that consecutive sentences were disproportionate to the seriousness of his conduct and that they were not necessary to protect the public from future crime by him.

*Standard of Review*

**{¶31}** Under R.C. 2953.08(G)(2), an appellate court may reverse a sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. Clear and convincing evidence is that "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Id.* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

*Analysis*

**{¶32}** Because Schmidt committed multiple felony offenses, the presumption is that his prison terms must be served concurrently and not consecutively. *See State v. Gwynne*, ___ Ohio St.3d ___, 2022-Ohio-4607, ¶ 10, citing R.C. 2929.41(A). R.C. 2929.41(A) provides in its pertinent part, "[e]xcept as provided in * * * division (C) of section 2929.14, * * * a prison term, jail term, or sentence of imprisonment shall be served concurrently with any other prison term, jail term, or sentence of imprisonment imposed by a court of this state, another state, or the United States." R.C. 2929.41(A). *See also Gwynne* at ¶ 10, citing *State v.*

*Polus*, 145 Ohio St.3d 266, 2016-Ohio-655, ¶ 10 ("[t]he first sentence of R.C. 2929.41(A) enacts the general rule requiring concurrent sentencing with only clearly delineated exceptions"); and *State v. Hitchcock*, 157 Ohio St.3d 215, 2019-Ohio-3246, ¶ 21 ("[t]he general principle set forth in the Revised Code is that concurrent sentences are the default and consecutive sentences are the exception"). R.C. 2929.14(C) states in its pertinent part that:

> (4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

*See also Gwynne* at ¶ 10, citing R.C. 2929.14(C)(4).

{¶33} R.C. 2929.14(C)(4) requires a trial court to make specific findings on the record before imposing consecutive sentences. *State v. Hites*, 3d Dist. Hardin No. 6-11-07, 2012-Ohio-1892, ¶ 11; *State v. Peddicord*, 3d Dist. Henry No. 7-12-24, 2013-Ohio-3398, ¶ 33. Specifically, the trial court must find: (1) consecutive sentences are necessary to either protect the public or punish the offender; (2) the sentences would not be disproportionate to the offense committed; and (3) one of the factors in R.C. 2929.14(C)(4)(a), (b), or (c) applies. *Id.*; *Id.*

{¶34} Further, the trial court must state the required findings at the sentencing hearing prior to imposing consecutive sentences and incorporate those findings into its sentencing entry. *State v. Sharp*, 3d Dist. Putnam No. 12-13-01, 2014-Ohio-4140, ¶ 50, citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶ 29. However, a trial court "has no obligation to state reasons to support its findings." *Bonnell* at ¶ 37.

{¶35} At Schmidt's sentencing hearing, the trial court found that "consecutive sentences are necessary to protect the public from future crime[s] and to punish [Schmidt]." (Feb. 2, 2023 Tr. at 37). Further, the trial court found that "consecutive sentences are not disproportionate to the seriousness of the [Schmidt]'s conduct and to the danger the [Schmidt] poses to the public." (*Id.*). Moreover, the trial court found "that at least two of the multiple offense were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single

prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of [Schmidt]'s conduct." (*Id.*). Importantly, the trial court made its determination under R.C. 2929.14(C)(4) and (C)(4)(b).

{¶36} Accordingly, the record reflects the trial court made the appropriate R.C. 2929.14(C)(4) findings before imposing consecutive sentences and incorporated those findings into its sentencing entry.

{¶37} In this appeal, Schmidt does not argue that the trial court failed to make the consecutive-sentence findings as required by R.C. 2929.14(C)(4). Therefore, Schmidt concedes that the trial court's decision to impose consecutive sentences was not clearly and convincingly contrary to law under R.C. 2953.08(G)(2)(b). Instead, Schmidt argues that the record does not support the trial court's consecutive-sentencing finding under R.C. 2929.14(C)(4). *See* R.C. 2953.08(G)(2)(a).

{¶38} Upon our review of the record, we conclude Schmidt's argument regarding the trial court's findings under R.C. 2929.14(C)(4) is without merit. The record reflects that Schmidt first came into contact with Aly.S. when she was 12. Later, he commenced and improper relationship with her "online" at age 13. The "online" activities included Schmidt and Aly.S. sharing images of themselves in various states of undress. Ultimately, Schmidt began to seek out opportunities to interact with Aly.S. at her parents' home under the guise that he was visiting her

sister (Am.S.). It was at this point that their relationship eventually evolved into the improper sexual conduct at issue. Thus, from the record before us, we will not conclude that his sentences are disproportionate to the seriousness of his conduct.

{¶39} Schmidt further argues that the public at large is not in danger because of his lack of a criminal history at the time he was sentenced and because of the consensual nature of his relationship with Aly.S. On the contrary, the record in this case demonstrates that Schmidt was aware that his conduct was *unlawful*, but he continued to engage in constant criminal behavior with a minor who had no capacity to consent to a sexual relationship with him. Moreover, even though Schmidt's offenses involved a single victim here, his acts were progressive and repetitive. Accordingly, the trial court's determinations that consecutive sentences were not disproportionate to the seriousness of Schmidt's conduct and the danger he posed to the public and were necessary to protect the public from future crime were supported by the record.

{¶40} Thus, the record supports the trial court's consecutive-sentencing findings under R.C. 2929.14(C)(4). *Gwynne*, 2022-Ohio-4607 at ¶ 12; *State v. Richey*, 12th Dist. Clermont Nos. CA2022-08-038, CA2022-08-039, CA2022-08-040, and CA2022-08-041, 2023-Ohio-336, ¶ 14; *State v. Hunter*, 12th Dist. Butler No. CA2022-05-054, 2023-Ohio-1317, ¶ 30. As a result, the trial court did not err in imposing consecutive sentences (under Counts Two and Four) for unlawful sexual conduct with a minor.

**{¶41}** Accordingly, Schmidt's third assignment of error is overruled.

**{¶42}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**MILLER, P.J., concurs.**

**WALDICK, J., concurs in Judgment Only.**

**/hls**