**[Cite as *State v. Potter*, 2021-Ohio-3502.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
FULTON COUNTY

State of Ohio                                              Court of Appeals No.  F-21-002

    Appellee                                             Trial Court No.  19CR122

v.

Danette L. Potter                                      **DECISION AND JUDGMENT**

    Appellant                                           Decided:  September 30, 2021

* * * * *

Scott A. Haselman, Fulton County Prosecuting Attorney,
for appellee.

Karin L. Coble, for appellant.

* * * * *

**ZMUDA, P.J.**

## I.    Introduction

{¶ 1} Appellant, Danette Potter, appeals the judgment of the Fulton County Court

of Common Pleas, sentencing her to 180 days in jail, suspending the sentence, and

placing her on two years of community control after she pled guilty to one count of passing bad checks.

## A.    Facts and Procedural Background

{¶ 2} On December 16, 2019, appellant was indicted on one count of passing bad checks in violation of R.C. 2913.11(B), a felony of the fifth degree.  The charge related to appellant's use of a check to pay a $1,000 veterinarian bill to Countryside Animal Clinic sometime between June 7 and June 10, 2019.  On April 1, 2020, appellant entered a plea of not guilty to the sole charge in the indictment.  Thereafter, the matter proceeded through pretrial discovery and motion practice.

{¶ 3} Following successful plea negotiations, appellant appeared before the trial court for a change of plea hearing on November 3, 2020.  At the hearing, appellant entered a guilty plea to the amended charge of passing bad checks in violation of R.C. 2913.11(B), a misdemeanor of the first degree.[1]  The trial court accepted appellant's plea, found her guilty of the amended charge, and referred the matter to the Adult Probation Department for the preparation of a presentence investigation report.

{¶ 4} One month later, on December 22, 2020, appellant came before the trial court for sentencing.  At the sentencing hearing, the state acknowledged that appellant

---

[1] Due to a malfunction with the trial court's audio recording equipment, there is no transcript of the plea hearing in the record.

2.

had already paid the $1,000 in restitution owed to Countryside Animal Clinic, and stated: "So, as far as the State is concerned, [appellant] does not owe them any restitution."

{¶ 5} Thereafter, appellant's trial counsel and appellant made statements in mitigation. Trial counsel informed the court:

> Throughout this case, Ms. Potter has emphasized to me not always even in relation to the case how much she has struggled. And I know a lot of individuals struggle, but since her divorce she has faced largely financial [ruin]. Her field, attending to horses and rodeo, has been devastated both by recent weather events that have increased the price of hay, as well as by COVID, which has collapsed the rodeo [circuit]. Moreover, she is in ill health as reflected by the PSI, and moreover, is still recovering from COVID, which she had since we were in Court last. She spoke to me passionately before Court about her struggle in keeping her horses alive when she herself was bed bound for 3 weeks, trying to feed these horses without assistance.

For her part, appellant explained to the court that she never intended her check to bounce, and insisted that she thought there were adequate funds in her account to cover the $1,000 check.

{¶ 6} After considering the foregoing statements and the presentence investigation report prepared in this case, the trial court ordered appellant to serve 180 days in jail, but

3.

stated that the jail sentence "will be suspended and reserved and [appellant] will be placed on community control for a period of two years." The court went on to articulate several conditions of appellant's community control, which included making payments totaling $2,495.46 to Countryside Animal Clinic. In order to assure these payments are made, the trial court stated:

> And I want [appellant] to find some form of meaningful employment outside of taking care of those horses so that we can earn some money to start making these payments. If [you're] actually making money with these horses, I mean if that's something that [you're] doing and [you're] able to maintain somewhat, then I am fine with that, but I don't want this to simply be an expensive hobby where you earn nothing and then say to the Court "I don't have any money." We are running into that enough where people simply don't want to work.

{¶ 7} Thereafter, appellant's trial counsel objected to the trial court's order directing appellant to make payments to Countryside Animal Clinic. Counsel questioned whether the trial court had the authority to grant a judgment, but was interrupted by the trial court, who stated: "I didn't grant a judgment. I said she had to make restitution." Trial counsel then asked the court to note the objection for the record, and the sentencing hearing concluded.

4.

{¶ 8} Following the sentencing hearing, the trial court prepared a sentencing entry. In the entry, the court articulated its sentence and ordered appellant to pay the costs of prosecution, costs of court appointed counsel, and court costs. The court specifically noted its finding of appellant's ability to pay such costs in the entry. In addition, the trial court reiterated several special conditions of appellant's community control that it initially raised during the sentencing hearing. Notably, the trial court omitted any language about making payments to Countryside Animal Clinic, but retained the condition requiring appellant to "find and maintain gainful employment within 6 months of sentencing."

{¶ 9} Upon receipt of the trial court's sentencing entry, appellant filed her timely notice of appeal.

## B. Assignments of Error

{¶ 10} On appeal, appellant assigns the following errors for our review:

Assignment of Error One: The trial court erred in imposing restitution.

Assignment of Error Two: The trial court's community control term requiring employment is unreasonable in these circumstances.

Assignment of Error Three: The trial court's imposition of the maximum sentence is an abuse of discretion.

5.

Assignment of Error Four: The imposition of attorney fees is contrary to law.

## II.     Analysis

### i. The trial court did not order appellant to make restitution.

{¶ 11} In her first assignment of error, appellant argues that the trial court erred in ordering her to pay restitution to Countryside Animal Clinic.  Specifically, appellant takes issue with the statement made by the trial court at sentencing requiring her to make payments to Countryside Animal Clinic in the amount of $2,495.46.  Noting the state's acknowledgement that she already paid restitution to Countryside Animal Clinic (and therefore owes no further restitution related to this case), and referencing the fact that the trial court's sentencing entry is silent with respect to these additional payments, appellant asserts that "it is unclear whether the trial court intended the $2,495.46 to be 'restitution,' or whether it is a term of community control."  As such, appellant asks us to "formally declare that despite the court's verbal imposition of this payment at the sentencing hearing, no restitution or term of community control actually exists as the judgment entry is silent."

{¶ 12} For its part, the state asserts that the trial court did not impose restitution. The state recognizes that the trial court referenced a restitution order at the sentencing hearing, but acknowledges that such an order is not contained in the court's sentencing

6.

entry. Therefore, the state contends that the trial court did not make a restitution order in this case.

{¶ 13} It is an axiomatic rule that a trial court speaks through its journal entries. *State v. Miller*, 127 Ohio St.3d 407, 2010-Ohio-5705, 940 N.E.2d 924, ¶ 12. Therefore, "[i]f the journal entry and the judge's comments conflict, the journal entry controls." *State v. Hankins*, 89 Ohio App.3d 567, 569, 626 N.E.2d 965 (3d Dist.1993). Relying upon this axiomatic rule, the Twelfth District appropriately found that there is no order of restitution for it to review on appeal when a trial court verbally orders restitution at the sentencing hearing, but fails to mention restitution in its sentencing entry. *State v. Workman*, 12th Dist. Clermont No. CA2009-07-039, 2010-Ohio-1011, ¶ 11-12.

{¶ 14} Here, like in *Workman*, the trial court referenced restitution at the sentencing hearing, but did not order appellant to pay restitution in its sentencing entry. Further, it is unclear from the sentencing hearing transcript whether the trial court intended to characterize the $2,495.46 in payments to Countryside Animal Clinic as restitution or a condition of community control. When read in its context, it seems as though the trial court intended the latter. Nonetheless, to the extent the trial court wished to characterize the payments as restitution, its failure to include the order in its sentencing entry means that no such restitution order applies in this case.

7.

{¶ 15} Given our determination that appellant is not required to pay restitution in this case, we disagree with appellant's proposition that the trial court erred in imposing restitution. Accordingly, appellant's first assignment of error is not well-taken.

**ii. The trial court's employment condition is reasonable in this case.**

{¶ 16} In appellant's second assignment of error, she argues that the trial court's imposition of a condition of community control requiring her to seek and obtain employment is unreasonable under the circumstances of this case. Appellant takes issue with the trial court's condition, because she asserts that she already has income-generating employment via her horse business.

{¶ 17} At the outset, we reject the factual predicate upon which appellant's argument is based, namely that the trial court imposed a condition upon appellant that requires her to obtain employment *in addition* to her alleged self-employment. Our review of the sentencing transcript reveals that the trial court was concerned with appellant securing employment, of any kind, that would generate an income sufficient to meet appellant's financial needs. The court did not exclude appellant's horse business as a means of satisfying its employment condition, so long as it actually generates an income and is not simply an "expensive hobby." With this observation in mind, we will proceed to examine the merits of appellant's argument.

{¶ 18} Under R.C. 2929.25(C)(2), a trial court sentencing an offender to community control for a misdemeanor offense must "require as a condition of any

8.

community control sanction that the offender abide by the law and not leave the state without the permission of the court or the offender's probation officer." Additionally, the court is permitted to "impose additional requirements on the offender" in order to serve the interest of doing justice, rehabilitate the offender, and ensure the offender's good behavior. *Id.* The offender's compliance with these additional requirements is treated as a condition of the community control sanction imposed by the trial court. *Id.*

{¶ 19} A trial court enjoys broad discretion in imposing conditions of community control under R.C. 2929.25 and we will not reverse the trial court's imposition of such conditions absent a finding of an abuse of discretion. *State v. Hause*, 12th Dist. Warren No. CA2008-05-063, 2009-Ohio-548, ¶ 7, citing *City of Garfield Heights v. Tvergyak*, 8th Dist. Cuyahoga No. 84825, 2005-Ohio-2445, ¶ 5. An abuse of discretion connotes that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 20} While a trial court has discretion in imposing community control conditions, such discretion is not limitless. *State v. Jones*, 49 Ohio St.3d 51, 52, 550 N.E.2d 469 (1990). The conditions imposed must further the three statutory objectives of misdemeanor community control (i.e. doing justice, rehabilitating the offender, and insuring good behavior) and they may not be so broad that they unnecessarily impinge upon the probationer's liberty. *Id.* In determining whether a condition furthers the objectives of community control, we consider "whether the condition (1) is reasonably

9.

related to rehabilitating the offender, (2) has some relationship to the crime convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation." *Id.* at 53.

{¶ 21} Upon consideration of the record, we find the trial court appropriately ordered appellant to seek and obtain employment as a condition of her community control. Initially, we note that the employment condition is a nonresidential sanction that is expressly authorized in the Revised Code. *See* R.C. 2929.27(A)(10) (permitting a court that is sentencing an offender for a misdemeanor to impose nonresidential sanctions including the "requirement that the offender obtain employment"). Further, we find that the employment condition is reasonably related to the goal of rehabilitating appellant, bears a relationship to the offense of passing bad checks, and relates to appellant's conduct that gave rise to her conviction.

{¶ 22} Appellant's propensity to pass bad checks in the future will likely diminish if she improves her economic situation by securing gainful employment. Indeed, employment (and the compensation associated therewith) is perhaps the most meaningful step appellant could take to prevent her from being tempted to pass a bad check in the future. *See State v. Cauthen*, 1st Dist. Hamilton No. C-130475, 2015-Ohio-272, ¶ 15 ("Requiring an offender to work can be an important step in her rehabilitation. Supporting oneself by legal employment helps end the financial incentive of criminal

10.

behavior and can, by itself, be salutary, encouraging a sense of accomplishment and achievement in an offender seeking rehabilitation.").

{¶ 23} Because the trial court's community control condition requiring appellant to seek and obtain employment is specifically authorized by R.C. 2929.27(A)(10) and is related to the specific facts of this case, we find that the trial court did not abuse its discretion in imposing it. Accordingly, appellant's second assignment of error is not well-taken.

### iii. The trial court's sentence was properly imposed.

{¶ 24} In her third assignment of error, appellant argues that the trial court abused its discretion by sentencing her to the maximum sentence, because she did not commit the worst form of the offense of passing bad checks and has no criminal history that would support the imposition of a maximum sentence.

{¶ 25} We review a misdemeanor sentence for an abuse of discretion. *State v. Johnson*, 6th Dist. Lucas Nos. L-20-1164, L-20-1165, 2021-Ohio-1614, ¶ 22, citing *State v. Perz*, 173 Ohio App.3d 99, 2007-Ohio-3962, 877 N.E.2d 702, ¶ 26 (6th Dist.). When imposing a sentence for a misdemeanor offense, a trial court must consider the purposes and principles of misdemeanor sentencing as set forth in R.C. 2929.21, as well as the sentencing factors set forth in R.C. 2929.22. Under R.C. 2929.21, a trial court "shall be guided by the overriding purposes of misdemeanor sentencing," which are to protect the public from future crime by the offender and to punish the offender. To achieve those purposes, R.C. 2929.21 provides that a trial court "shall consider [1] the impact of the

11.

offense upon the victim and the need for changing the offender's behavior, [2] rehabilitating the offender, and [3] making restitution to the victim * * *." When a misdemeanor sentence is imposed within the statutory limits, a reviewing court will presume that the judge followed these statutes, absent evidence to the contrary. *State/Division of Wildlife v. Coll*, 6th Dist. Sandusky No. S-16-022, 2017-Ohio-7270, ¶ 23, citing *Toledo v. Reasonover*, 5 Ohio St.2d 22, 213 N.E.2d 179 (1965), paragraph one of the syllabus.

{¶ 26} Here, appellant was convicted of a misdemeanor of the first degree, which is punishable by up to 180 days in jail. R.C. 2929.24(A)(1). As such, the trial court's 180-day sentence is within the statutory range, and we presume that the sentence was proper. *State v. Jones*, 6th Dist. Lucas No. L-16-1014, 2017-Ohio-413, ¶ 14.

{¶ 27} Appellant does not present evidence to rebut this presumption. Further, the trial court indicated its consideration of the principles and purposes of misdemeanor sentencing and the seriousness and recidivism factors under R.C. 2929.20 and 2929.21, respectively, prior to imposing its sentence. Nonetheless, appellant argues that there was no evidence to show that she committed the worst form of the offense of passing bad checks or that the maximum sentence was necessary to deter her from future offenses.

{¶ 28} In support of her argument, appellant relies upon R.C. 2929.22(C), which states that a court may only impose the maximum sentence "upon offenders who commit the worst forms of the offense or upon offenders whose conduct and response to prior

12.

sanctions for prior offenses demonstrate that the imposition of the longest jail term is necessary to deter the offender from committing a future crime." Appellant's reliance upon R.C. 2929.22(C) is misplaced.

{¶ 29} In *Jones*, we found that sentencing courts are not bound by the judicial fact-finding component of R.C. 2929.22(C) or the limitation contained therein that only those offenders who have committed the worst forms of an offense may be given the maximum sentence. *Id*. at ¶ 13, citing *State v. Nuby*, 7th Dist. Mahoning No. 16MA0036, 2016-Ohio-8157, ¶ 8-9, *State v. Black*, 1st Dist. Hamilton No. C-060861, 2007-Ohio-5871, ¶ 19–21, and *State v. Simms*, 10th Dist. Franklin No. 05AP-806, 2006-Ohio-2960, ¶ 20. Therefore, the trial court was not required to find that appellant committed the worst form of the offense of passing bad checks or that a maximum sentence was necessary to deter her from committing future offenses before sentencing her to the maximum sentence.

{¶ 30} In light of the foregoing, we find that the trial court did not abuse its discretion in sentencing appellant to 180-days in jail. Accordingly, appellant's third assignment of error is not well-taken.[2]

---

[2] It is noteworthy that while the trial court imposed the maximum sentence, it then suspended the sentence in its entirety. Therefore, appellant will not serve any jail time so long as she complies with the conditions of her community control.

13.

**iv. The trial court acted contrary to law when it ordered appellant to pay the costs of appointed counsel for the first time in its sentencing entry, without first finding that appellant had the ability to pay such costs and imposing the costs at the sentencing hearing.**

{¶ 31} In appellant's fourth assignment of error, she argues that the trial court erred in ordering her to pay her court-appointed counsel fees.

{¶ 32} On appeal we review whether the imposition of costs was contrary to law. *State v. Tucker*, 6th Dist. Wood No. WD-16-063, 2018-Ohio-1869, ¶ 36. "[W]here a court imposes the discretionary costs of supervision, confinement, or assigned counsel, 'it must affirmatively find that the defendant has, or reasonably may be expected to have, the ability to pay.'" *State v. Connin*, 6th Dist. Fulton No. F-20-005, 2020-Ohio-6867, ¶ 26, quoting *State v. Brown*, 6th Dist. Lucas No. L-18-1140. 2020-Ohio-1650, ¶ 37.

{¶ 33} At the sentencing hearing in this case, the trial court informed appellant that she would be "required to pay any costs." The court did not delineate those costs, nor did it make a finding that appellant is able to pay the costs. However, the trial court was more specific in its sentencing entry, stating: "The Court having considered the record in this case including the PSI, finds the Defendant does have the ability to pay the financial sanctions hereinafter imposed. Defendant is ordered to pay all costs of prosecution, including court appointed counsel fees."

{¶ 34} In *State v. Lewis*, 6th Dist. Lucas No. L-18-1069, 2019-Ohio-3929, we held that a trial court may not impose discretionary costs in its sentencing entry if it does not first make a finding of appellant's ability to pay and impose those costs at the sentencing

14.

hearing. *Id.* at ¶ 54, citing *State v. Temple*, 6th Dist. Lucas No. L-18-1070, 2019-Ohio-3503, ¶ 13; *see also State v. Easter*, 2016-Ohio-7798, 74 N.E.3d 760, ¶ 17 (2d Dist.) (concluding that it was error for the sentencing court to order the defendant to pay court-appointed counsel fees in the final judgment entry without first making a finding that the defendant had an ability to pay the fees, and without providing notification of the imposition of those fees at the sentencing hearing).

{¶ 35} Here, the trial court failed to find that appellant has the ability to pay the costs of appointed counsel at the sentencing hearing. Further, the trial court did not clearly impose the costs of appointed counsel at sentencing when it ambiguously ordered appellant to pay "any costs." Consistent with our decision in *Lewis*, we find that the trial court's imposition of the costs of appointed counsel for the first time in the sentencing entry was contrary to law.

{¶ 36} Accordingly, appellant's fourth assignment of error is well-taken, and the trial court's imposition of the costs of appointed counsel is vacated.

### III. Conclusion

{¶ 37} In light of the foregoing, the judgment of the Fulton County Court of Common Pleas is affirmed, in part, and reversed, in part. We hereby vacate the trial

court's imposition of the costs of appointed counsel, and affirm the remainder of the trial court's judgment. The parties are ordered to split the costs of this appeal under App.R. 24.

Judgment affirmed, in part,<br>and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.      _____
              JUDGE

Thomas J. Osowik, J.

             _____
Gene A. Zmuda, P.J.        JUDGE
CONCUR.

             _____
              JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.